UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOHN FORKIN,

                          Plaintiff,

            v.

LOCAL 804 UNION (IBT) and UNITED PARCEL
SERVICE, INC. (UPS),

                          Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-3397 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff John Forkin, proceeding *pro se*, commenced the above-captioned action against

the International Brotherhood of Teamsters (IBT), Eddie Villalta, Joe Forcelli, Danny

Betancourt, United Parcel Service (UPS), and Joe Remo on June 11, 2018, pursuant to section 8

of the National Labor Relations Act, 29 U.S.C. § 151 *et. seq.* ("NLRA"), section 301 of the

Labor Management Relations Act of 1947, 29 U.S.C. § 185 *et seq.* ("LMRA"), 42 U.S.C. §

1983, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Title VII of the

Civil Rights Act, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and the applicable collective bargaining

agreement.  (Compl., Docket Entry No. 1.)  Plaintiff alleged claims of unlawful discharge and

unfair labor practices, state law fraud, as well as a violation section 1001 of the federal criminal

laws, 18 U.S.C. § 1001(a).  (*Id*.)  Plaintiff filed an Amended Complaint on June 26, 2018, (Am.

Compl., Docket Entry No. 12), and a Second Amended Complaint ("SAC") on October 19,

2018, asserting claims only against Local 804 Union (IBT)[1] ("Local 804") and United Parcel

Service, Inc. ("UPS"), and alleging the same claims except Plaintiff did not replead the section

1983 claim, (SAC, Docket Entry No. 34).  The Court liberally construes the SAC as alleging: (1)

a NLRA claim for breach of the duty of fair representation; (2) a LMRA hybrid section

301/breach of duty of fair representation claim; (3) an ADA disability discrimination claim and

reasonable accommodation claim; (4) a Title VII discrimination claim; (5) a 18 U.S.C. § 1001(a)

claim; and (6) a state law fraud claim.[2]

Currently before the Court are two separate motions to dismiss the SAC filed by UPS and

Local 804 for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure; Plaintiff opposes Defendants' motions and moves to

amend the SAC by filing a proposed third amended complaint.[3]  For the reasons set forth below,

the Court grants in part and denies in part Defendants' motions to dismiss the SAC and denies

Plaintiff's motion for leave to file the proposed third amended complaint.  The Court grants

Plaintiff leave to file a corrected, third amended complaint within thirty (30) days of this

---

[1]  Plaintiff appears to have inadvertently included a reference to International Brotherhood of Teamsters in the caption as he fails to include any allegations against IBT.  (*See generally* SAC.)

[2]  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (alteration and internal quotation marks omitted) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007))).

[3]  (UPS Mot. to Dismiss ("UPS Mot."), Docket Entry No. 47; UPS Mem. in Law in Supp. of UPS Mot. ("UPS Mem."), Docket Entry No. 47-1; Local 804 Mot. to Dismiss ("Local 804 Mot."), Docket Entry No. 48; Local 804 Mem. of Law in Supp. of Local 804 Mot. ("Local 804 Mem."), Docket Entry No. 48-1; Pl. Opp'n to Local 804 Mot. and UPS Mot. ("Pl. Opp'n"), Docket Entry No. 47-5; Pl. Suppl. Opp'n to Local 804 Mot. and UPS Mot. ("Pl. Suppl. Opp'n"), Docket Entry No. 47-6; Pl. Mot. for Leave to File TAC, Docket Entry No. 44; Proposed TAC, Docket Entry No. 44-1.).

Memorandum and Order.

## I. Background

The Court assumes the truth of the factual allegations in the SAC for the purposes of this Memorandum and Order.  In light of Plaintiff's *pro se* status, the Court also considers and assumes the truth of the factual allegations in Plaintiff's opposition and supplemental opposition. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (finding that district courts may consider factual allegations made by a *pro se* party in his papers opposing a motion to dismiss).

### a. Plaintiff's employment

On June 6, 2005, UPS hired Plaintiff as a summer intern for its corporate security program in Atlanta, Georgia.  (Pl. Suppl. Opp'n 1.)  UPS subsequently employed Plaintiff as a "revenue recovery clerk, unloader, and eventually promoted [him] to hub supervisor in Latham, NY, for approximately 1 year."  (*Id*.)  Thereafter, Plaintiff left UPS with "positive rehire status directly after graduating" from the "State University of New York at Albany in 2007."  (*Id*.)

On or about June 20, 2008, UPS hired Plaintiff as a package car driver and assigned him to UPS' facility in Maspeth, New York.  (SAC 3; Pl. Suppl. Opp'n 2.)  Plaintiff alleges that "during the first [seven] years of employment, [his] Employee Disciplinary History ('EDH') was nearly spotless."  (Pl. Suppl. Opp'n 2.)

In 2015, Plaintiff became an alternate steward and "actively campaigned for the former Executive Board," but the former board lost to Local 804.  (*Id*.)  Plaintiff alleges that after Local 804 took office, his "disciplinary history skyrocketed to an astonishing (approximately) [twenty-eight] new incidents on his EDH."  (*Id*.)

### b.    Collective bargaining agreement

During all relevant times, UPS and IBT were parties to a National Master Agreement

("NMA"), to which Local 804 was also bound.  (Local 804 Mem. 2–3; UPS Mem. 2; NMA,

annexed to Decl. of Serge Ambroise ("Ambroise Decl.") as Ex. 1, Docket Entry No. 48-3.)  UPS

and Local 804 were also parties to a local supplemental agreement to the NMA (the

"Supplemental Agreement"), which was in effect during all relevant times.  (Local 804 Mem. 3;

UPS Mem. 2; Suppl. Agreement, annexed to Ambroise Decl. as Ex. 2, Docket Entry No. 48-4.)

Plaintiff's employment was covered by the NMA and the Supplemental Agreement.[4]  (Local 804

Mem. 3; UPS Mem. 2.)

### c.    Plaintiff's grievances

### i.    January 23, 2017 incident and grievance

On January 23, 2017, UPS "placed plaintiff on a Discharge [f]or 72 [hours] for

purchasing a beverage on company time."  (Local 804 Grievance Form for Jan. 23, 2017

Grievance ("January 2017 Grievance"), annexed to Pl. Suppl. Opp'n as Ex. 12, Docket Entry No.

43.)  Plaintiff alleges that he "was placed on several 72 hour notices for drinking water and doing

exactly what UPS has instructed him to do" but that "[o]ther similarly situated employees were

---

[4]  Plaintiff does not attach the NMA or Supplemental Agreement to the SAC, however, because Plaintiff explicitly refers to and relies on the provisions of the NMA and Supplemental Agreement in the SAC and does not dispute the accuracy or applicability of either agreement, the Court relies on these agreements in deciding Defendants' motions as they are incorporated by reference into the SAC.  (*See generally* SAC); *see also Naughton v. Local 804 Union*, No. 18-CV-2830, 2019 WL 1003054, at *6 (E.D.N.Y. Mar. 1, 2019) (incorporating by reference a collective bargaining agreement because the plaintiff explicitly referred to and relied upon the agreement in his amended complaint); *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 376–77 (E.D.N.Y. 2011) (incorporating by reference a collective bargaining agreement because the plaintiff specifically identified the agreement in the complaint and did not dispute the accuracy or applicability of the agreement which was attached to the defendant's affirmation).

never disciplined for the exact same behavior." (Pl. Opp'n 3.) Plaintiff reported the incident to Local 804 and discussed the incident with his supervisor on January 25, 2017, at which time he admitted "to stealing time." (Jan. 2017 Grievance.)

On May 23, 2017, a UPS/Local 804 Panel (the "May 2017 Panel") issued a final and binding determination as to the January 2017 Grievance,[5] which states that Plaintiff's grievance was "settled in executive session." (Teamsters Local 804 and United Parcel Service Grievance Panel dated May 23, 2017, annexed to Pl. Suppl. Opp'n as Ex. 4, Docket Entry No. 43.) Plaintiff appears to have entered into a settlement agreement which included a "final warning." (Settlement Agreement between UPS, Local 804, and Grievant John Forkin, annexed to Pl. Suppl. Opp'n as Ex. 5, Docket Entry No. 43.) Plaintiff contends that, on May 23, 2017, Local 804 breached its duty of fair representation "by pressuring [P]laintiff into agreeing to discharge settlements for . . . baseless discharges UPS had accumulated against" him. (Pl. Suppl. Opp'n 6; Teamsters Local 804 and United Parcel Service Grievance Panel dated May 23, 2017.) Plaintiff also alleges that two of the union representatives failed in their duties to Plaintiff because "Eddie . . . never showed [up] to the hearing" and "Tony showed up after the panel finished." (Pl. Suppl. Opp'n 17–18.)

### ii. Plaintiff's medical condition and leave

On June 6, 2017, during a meeting at UPS's Maspeth facility to discuss Plaintiff's attendance, Plaintiff informed several members of UPS's management team of his disability.[6] (Pl. Suppl. Opp'n 4.)

---

[5] Under Article 18(c) of the Supplemental Agreement, grievances which cannot be settled between the parties may be submitted for a binding determination upon written notice. (Local Agreement 245–46.)

[6] Plaintiff alleges that he suffers from "a skin disorder." (Pl. Suppl. Opp'n 4.)

5

During the week of June 12, 2017, while Plaintiff was on a previously approved vacation, Plaintiff met with a dermatologist and was diagnosed with "a skin disorder." (*Id.*) The dermatologist issued a prescription note "instructing UPS that Plaintiff should 'not shave.'" (Pl. Suppl. Opp'n 4; Dr. Samer H. Jaber's Prescription Note ("Prescription Note"), annexed to Pl. Suppl. Opp'n as Ex. 2, Docket Entry No. 43.) When Plaintiff appeared for work, and without his union representative, UPS instructed Plaintiff to go home and to file for a variance from UPS' appearance standards. (Pl. Suppl. Opp'n 4–5.) Thereafter, Plaintiff submitted an Application for a Variance to UPS Personal Appearance Standards. (*Id.* at 2, 5.) UPS reviewed and approved Plaintiff's Application for a Variance on June 28, 2017. (Email from UPS H.R. Service Center dated June 28, 2018 ("Variance Approval Email"), annexed to Pl. Suppl. Opp'n as Ex. 2, Docket Entry No. 43.)

### iii.   Plaintiff's termination and grievance

On June 22, 2017, prior to the approval of Plaintiff's application for a variance on June 28, 2017, UPS issued Plaintiff a Notice of Discharge "for violation of the final warning that he received from the [Panel] inclusive of but not limited to failure to follow instructions with methods and procedures, attendance, and appearance." (Letter from Joe Reimo dated July 14, 2017 ("Reimo Letter"), annexed to Pl. Suppl. Opp'n as Ex. 3, Docket Entry No. 43.)

Plaintiff alleges that his discharge was "without just cause" and in violation of Article 12, sections 1 and 2 of the Supplemental Agreement[7] and the LMRA. (SAC 3.) In response,

---

[7] Article 12, section 1 of the Supplemental Agreement provides in pertinent part that "drinking, or proven or admitted dishonesty" "shall be causes for immediate suspension or discharge of an employee." (Suppl. Agreement 224.) Section 1 further provides that "[i]n cases not involving the theft of money or merchandise an employee will remain on the job until a hearing is held with the business agent," which shall take place within seventy-two (72) hours. (*Id.*) Article 12, section 2 provides in pertinent part that "[f]or non-cardinal infractions, the

Plaintiff contacted Local 804 and was "assured" that they would "file the proper grievances." (Pl. Suppl. Opp'n 5.)

Plaintiff contacted Steve South, an IBT representative, and Steve set up a meeting between Local 804 and UPS. (*Id*.) According to Plaintiff, the meeting was held on or about July 12, 2017, at which time "UPS purported confusing and contradictory standards for appearance variance." (*Id*.) Plaintiff also alleges that UPS "asserted that they would consult with other managers when they returned from vacation" as to whether Plaintiff could return to work pending arbitration but that Local 804 "completely disregarded [P]laintiff's rights to work pending arbitration." (*Id*. at 5–6.)

On October 17, 2017, a Local 804 and UPS Grievance Panel (the "October 2017 Panel") conducted a hearing, denied the grievance, and upheld Plaintiff's termination. (SAC 4; Suppl. Agreement 245.) Plaintiff alleges that on or about "October 17, 2017," Local 804 "intentionally and with malice breached its duty to fairly represent" him by "failing to process" his grievance. (SAC 4.) In addition, Plaintiff alleges that Local 804 acted "in bad faith by not preparing a proper written opening statement." (Pl. Opp'n 2.) Plaintiff further alleges that Local 804 and UPS are "conspiring . . . to discharge [an] employee['s] right to remain on the job with pay . . . even though the employee did not commit a cardinal violation" and that Local 804 and UPS are "routinely and with malice failing to properly invoke Article 7[8] of the CBA thus defrauding its

---

employee shall be allowed to remain on the job consistent with Article 7 of the [NMA], without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure." (*Id*.)

[8] Article 7 of the NMA provides in pertinent part that an "[a]uthorized representative[] of the Union may file grievances alleging violation of this Agreement, under local grievance procedure, or as provided herein." (NMA 20.) It also provides that, "[e]xcept in cases involving cardinal infractions under the applicable Supplement, Rider or Addendum, an employee to be

members of salary . . . ."  (SAC 4.)

Plaintiff alleges that Local 804 "completely disregarded [his] rights to return to work pending arbitration" and that Plaintiff "was unemployed for the four months that led up to arbitration."  (Pl. Suppl. Opp'n 5.)  In addition, Plaintiff alleges that he had to call Local 804 after the arbitration hearing to find out "that he had lost," and he "never received an arbiter's decision or any such pertinent information."  (*Id.* at 6.)

Plaintiff generally alleges that Local 804 did not process "any grievances that should have been paid to [him] or addressed for two years, except on the single occasion in 2016."  (*Id.* at 18.)  Plaintiff "asked [Local] 804 why they haven't paid any grievances" and was told because "you're John Forkin."  (*Id.*)

### d.    Plaintiff's administrative filings

On or about June 21, 2017, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") against UPS for wrongful termination in violation of the CBA and discrimination under Title VII.  (SAC 4.)  Plaintiff also filed a complaint with the NYSDHR against Tony Freitas, a Local 804 union representative, because Freitas "prevented . . . Plaintiff from returning to work from June 23, 2017 [through] October 17, 2017."  (*Id.* at 5.)

On or about January 29, 2018, Plaintiff filed a complaint with the National Labor Relations Board ("NLRB") against Local 804 for unfair labor practice and against UPS for wrongful discharge.  (*Id.* at 5.)

In or about May of 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against UPS and Local 804 for discrimination.  (*Id.*)

---

discharged or suspended shall be allowed to remain on the job, without loss of pay unless and until the discharge is sustained under the grievance procedure."  (*Id.*)

Plaintiff received a right to sue letter from the EEOC on May 22, 2018.  (*Id.*)

Plaintiff filed the Complaint in this action on June 11, 2018.  (*Id.*)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the

complaint as true and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*,

884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.

N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan

v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  Although all

allegations contained in the complaint are assumed true, this principle is "inapplicable to legal

conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements."  *Iqbal*, 556 U.S. at 678.  In reviewing a *pro se* complaint, the court must

be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal

pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)

(noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint

liberally").

### b. Plaintiff's breach of duty of fair representation and hybrid section 301/breach of duty of fair representation

Plaintiff alleges that Local 804 failed to perform their duty of fair representation and that UPS breached the NMA and the Supplemental Agreement. (*See generally* SAC.) Specifically, Plaintiff alleges that Local 804 breached its duty of fair representation on or about October 17, 2017. (SAC 3.) In support, Plaintiff contends that he realized "after his grievance was denied that Local 804 Union and UPS . . . conspired to undermine Plaintiff's grievance . . . because Local 804 Union had intentionally represented Plaintiff in bad faith by not preparing a proper written opening statement." (Pl. Opp'n 2.) Plaintiff also alleges that he realized that Defendants denied his right to a fair hearing after the "Arbitrator denied the grievance." (*Id.*)

Defendants argue that Plaintiff's duty of fair representation and hybrid section 301/fair representation claims are barred by the applicable statute of limitations, and, in any event, are not sufficiently alleged. (Local 804 Mem. 8–9; UPS Mem. 6.)

### i. Plaintiff's claims are untimely

"A duty of fair representation claim has a six-months' limitations period, and a 'cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained.'" *Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554, 556 (2d Cir. 2014) (quoting *Cohen v. Flushing Hosp. and Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995)); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 142 (E.D.N.Y. 2014) ("The six-month clock begins to run from the time when the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred." (citation and internal quotation marks omitted)). Hybrid claims, which are claims against an employer and a union, are also subject to

10

a six-month statute of limitations.  *See Staten v. Patrolmen's Benevolent Assoc'n of City of N.Y., Inc.*, 736 F. App'x 17, 18 (2d Cir. 2018) ("There is a six-month statute of limitations for duty of fair representation claims."); *McLeod*, 995 F. Supp. 2d at 142 ("[T]he appropriate statute of limitations for 'hybrid' actions, i.e., cases involving both claims against the employer under [s]ection 301 and claims against the union for breach of the duty of fair representation, is six months."); *see also Martinez v. Caravan Transp., Inc.*, 253 F. Supp. 2d 403, 408 (E.D.N.Y. 2003) (same).

Plaintiff's breach of the duty of fair representation claim arises from Local 804's failure to negotiate Plaintiff's return to work pending arbitration, (Pl. Suppl. Opp'n 10), Local 804's failure to grieve UPS' alleged violation of the Supplemental Agreement's uniforms and appearance standards, (*id*. at 13), UPS' failure to pay him for "floating holidays," (*id*. at 14), and Local 804's failure to adequately represent him at the arbitration, (*id*. at 17).  Local 804's failure to fairly represent Plaintiff with regards to these alleged violations of the NMA and Supplemental Agreement, at the very least, should have been apparent to Plaintiff by the time the Panel heard and denied Plaintiff's grievance on October 17, 2017.  Indeed, Plaintiff's allegations suggest that he was present at the hearing and thus witnessed Local 804's alleged violations of the NMA and Supplemental Agreement, including the alleged failure to prepare a "proper written opening statement."  (Pl. Opp'n 1–2); *see Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 27 (E.D.N.Y. 2017) (finding the plaintiff's duty of fair representation claim to be untimely where the plaintiff alleged that the union failed to provide him with an interpreter during the arbitration hearing because "[t]his failure would have been apparent to [the p]laintiff on the date of the hearing . . . when no interpreter was present").  Plaintiff knew or should have known of the alleged breach on October 17, 2017, therefore, Plaintiff had until April of 2018 at the latest to

file this action.  Plaintiff filed the Complaint on June 11, 2018, approximately eight months after

the Panel's decision upholding his termination in October of 2017.  Plaintiff's duty of fair

representation and hybrid section 301 claims are therefore untimely.[9]  *See Black v. Anheuser*,

220 F. Supp. 3d 443, 450 (S.D.N.Y. 2016) ("[T]he only conceivable breach of the CBA is the

alleged wrongful termination of [the plaintiff's] employment on June 14, 2013.  [The plaintiff]

did not file his [c]omplaint . . . [until] more than six months later.  Accordingly, . . . any . . .

section 301 breach-of-contract claim . . . is barred by the statute of limitations."); *McLeod*, 995 F.

Supp. 2d at 143 (finding that the statute of limitations began to run when the plaintiff received a

letter from his union advising him that they were no longer proceeding with the case).

---

[9]  Plaintiff mistakenly relies on the timely filing of his complaint with the NLRB pursuant to 29 U.S.C. § 160(b) to assert that this action is timely.  (Pl. Suppl. Opp'n 19.)  Section 160(b) provides in relevant part that the NLRB has the power to issue complaints against any person for unfair labor practices but that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ."  29 U.S.C. § 160(b).  Thus, this statutory provision governs the NLRB's authority to issue a complaint for any unfair labor practice that occurred within the six months preceding the filing of the NLRB complaint.  Although Plaintiff's charge with the NLRB appears timely because it was filed in January of 2018, within six months of the October of 2017 arbitration, Plaintiff did not file this action until June 11, 2018, eight months after the date of the arbitration.  Accordingly, this action is untimely.  *See Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech, Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) ("In this circuit, it is well settled that the cause of action accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained" (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995))); *id.* at 49 ("'[P]arallel' avenue of relief to [plaintiff's duty of fair representation] claim . . . did not toll the applicable limitations period."); *Hosokawa v. Screen Actors Guild-American, Fed. of Television and Radio, Artists*, 234 F. Supp. 3d 437, 442 (S.D.N.Y. 2017) (stating that "'it is well settled that NLRB proceedings do not toll the six-month statute of limitations applicable to' breaches of the duty of fair representation" (quoting *Ode v. Terence Cardinal Cooke (HCC)*, No. 08-CV-1528, 2008 WL 5262421, at *3 (S.D.N.Y. Dec. 12, 2008))).

### ii.   Plaintiff fails to state a breach of the duty of fair representation and hybrid section 301/fair representation claim

Even assuming Plaintiff's claims are timely, Plaintiff nevertheless fails to state claims for breach of duty of fair representation and hybrid section 301/fair representation because he fails to provide any non-conclusory allegations sufficient to support a claim for breach of the duty of fair representation.

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)), *cert. denied*, 137 S. Ct. 313 (2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Flight Attendants in Reunion*, 813 F.3d at 473. If a plaintiff shows "that the union's actions meet this standard, the plaintiff must then 'demonstrate a causal connection between the union's wrongful conduct and the plaintiff's injuries.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 44 (2d Cir. 2014) (alteration omitted) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n,*

*Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)).  Neither conclusory allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim. *Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990)).

A "suit, which alleges that the employer breached the [CBA] and that the union breached its duty of fair representation, is known as a hybrid [section] 301/fair representation claim." *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42, 44 (2d Cir. 2017) (quoting *Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000)). Although "[a] plaintiff may sue the union or the employer, or both, [he] must allege violations on the part of both." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001).  A plaintiff must therefore "prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *Nelson v. Local 1181-1061, Amalgamated Transit Union, AFL-CIO*, 652 F. App'x 47, 49 (2d Cir. 2016) (quoting *White*, 237 F.3d at 178).

### 1. Plaintiff fails to allege that UPS acted arbitrarily, discriminatorily, or in bad faith

Accepting as true Plaintiff's allegations in the SAC, that Local 804 did not "invoke" Article 7 of the NMA[10] and failed to properly process his grievance, Plaintiff fails to plausibly plead that the alleged failure to invoke Article 7 and properly process his grievance was arbitrary, discriminatory, or in bad faith.  Plaintiff's conclusory allegation that Local 804 processed his grievance in bad faith is insufficient to state a claim.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

---

[10]  Plaintiff alleges that, on or about October 17, 2017, Local 804 "intentionally and with malice failed to properly invoke Article 7 . . . against UPS."  (SAC 3.)

cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).  In addition, although

Plaintiff argues that Local 804 "had only filed one grievance for the unjust discharge, and

refused to file the other grievances regarding the remaining CBA violations" as he requested,

Plaintiff does not provide any factual allegations as to the "remaining CBA violations" nor does

he provide factual allegations describing when and to whom the request was made.  Plaintiff also

does not provide factual allegations to support an inference that the grievances Local 804 failed

to file were meritorious.  *See Messina v. 1199 SEIU United Healthcare Workers E.*, 453 F.

App'x 25, 27 (2d Cir. 2011) (holding the duty is not breached "where the union fails to process a

meritless grievance, fails to process a grievance due to error in evaluating its merits, engages in

mere negligent conduct or errors in judgment, or decides not to arbitrate a grievance." (citations

omitted)); *Cruz v. Local Union No. 3 of Intn'l. Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54

(2d Cir. 1994) (same).  Moreover, the allegation that Local 804 failed to deliver a "proper written

opening statement," without more, is insufficient to state a duty of fair representation claim.  *See*

*Barr v. United Parcel Serv.*, 868 F.2d 36, 43–44 (2d Cir. 1989) ("Tactical errors are insufficient

to show a breach of the duty of fair representation; even negligence on the union's part does not

give rise to a breach."); *Pilchman v. Am. Fed. of State, Cty & Mun. Emps.*, No. 10-CV-4976,

2011 WL 4526455, at *7 (S.D.N.Y. Sept. 29, 2011) ("Mere negligence, even in the enforcement

of a collective bargaining agreement, is not enough to constitute a breach of this duty.  Instead,

arbitrary or bad-faith conduct . . . or substantial evidence of fraud, deceitful action or dishonest

conduct . . . is required to show a breach of the duty of fair representation." (citation omitted)).

### 2. Plaintiff fails to plausibly allege that Defendants engaged in a conspiracy to violate his rights

Plaintiff alleges that Local 804 and UPS "have been routinely conspiring to violate

Plaintiff's . . . right to fair representation by not allowing the impartial Arbitrator to decide the

outcome of the hearing." (Pl. Opp'n 2.) However, Plaintiff has not sufficiently alleged that Defendants engaged in a conspiracy to violate his rights.

Plaintiff has not plausibly alleged that an impartial arbitrator was necessary. The Supplemental Agreement specifically provides that grievances are to be heard by an equal number of representatives from UPS and Local 804, and, "in discharge and suspension cases, an impartial arbitrator shall hear the case with the UPS and Local 804 Panel members and cast the deciding vote in the event of a deadlock." (Suppl. Agreement 246.) Plaintiff does not allege that the Panel was deadlocked on Plaintiff's grievance. As a result, Plaintiff fails to plausibly allege that an impartial arbitrator was needed to cast the deciding vote. Moreover, Plaintiff provides no factual allegations in support of the alleged conspiracy. *See Barr*, 868 F.2d at 43 ("In order to have prevailed against the union, [the plaintiff] would had to show either that the conspiracy existed or that these tactical decisions . . . amounted to conduct and omissions so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." (citation and internal quotation marks omitted)).

In addition, Plaintiff's allegation that he was not aware that Defendants undermined his right to a fair hearing until after the hearing, even though they made him sign a document prior to the Panel rendering its decision stating that he was fairly represented, also fails to state a claim. Plaintiff alleges that, prior to the October 2017 Panel's decision denying his grievance, he was asked to sign a document stating that he was fairly represented and that it was after the October 2017 Panel denied his grievance that he realized that Defendants undermined his right to a fair hearing. (Pl. Opp'n 2.) However, this allegation fails to plausibly state how Local 804 failed to satisfy its duty to fairly represent Plaintiff or how Local 804 acted in unison with UPS to deny Plaintiff fair representation. There are no factual allegations in the SAC as to

Defendants' conduct from which the Court can infer the existence of a conspiracy. *See Bejjani v. Manhattan Sheraton Corp.*, No. 12-CV-6618, 2013 WL 3237845, at \*15–16 (S.D.N.Y. June 27, 2013) (finding that the plaintiff's allegations as to the union's ability to lawfully form agreements that disadvantages certain groups of employees fails to "plausibly [allege] the existence of a conspiracy that infused [the union's] otherwise-lawful actions with bad faith."), *aff'd*, 567 F. App'x 60 (2d Cir. 2014); *see also Sahni v. Staff Attorneys Asssoc.*, No. 14-CV-9873, 2016 WL 1241524, at \*8 (S.D.N.Y. Mar. 23, 2016) (dismissing the plaintiff's duty of fair representation claim where he alleged "that the [union] and [employer] colluded to delay arbitration of [the p]laintiff's involuntary transfer and suspension grievances" because the plaintiff failed to provide allegations as to why the defendants would have acted in unison and did not explain how the alleged agreement "operated on the ground").

Thus, Plaintiff's allegations in the SAC that Defendants conspired to violate his rights are conclusory and fail to factually support a conspiracy claim. *See Caldarera v. Int'l Longshoremen's Ass'n, Local 1*, 765 F. App'x 483, 486 (2d Cir. 2019) (finding the plaintiff's allegations of an "'employer-union conspiracy' are at best skeletal" because "it pleads no facts that would allow the [c]ourt to infer a causal connection between" an "isolated remark in September 2016 and the 'Do not hire' letter of January 2017"); *id.* (finding the plaintiff's "allegations of collusion regarding termination are similarly conclusory to his allegations that an 'employer-union' conspiracy excused him from filing a written grievance, and, as such, are insufficient to state a plausible claim").

### 3. Plaintiff fails to state a hybrid claim

Plaintiff's claim against UPS also fails because he does not sufficiently allege that Local 804 breached its duty of fair representation, a necessary element of a hybrid claim. An

"employee may sue the employer, the union, or both in a hybrid [section] 301/fair representation claim; to prevail the employee 'must not only show that [his] discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union.'" *Carrion*, 227 F.3d at 33 (quoting *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 165 (1983)); *see also Black*, 220 F. Supp. 3d at 449 ("An employee's claim against his employer for breach of a collective bargaining agreement can therefore proceed only if the employee's union violated its duty of fair representation." (quotations and citations omitted)); *Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005) ("It is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.'" (quoting *Vaca v. Sipes*, 386 U.S. at 186)).

Accordingly, because Plaintiff's claims are untimely and his allegations fail to state a duty of fair representation claim against Local 804 or a hybrid section 301/fair representation claim against Local 804 and UPS, the Court grants Defendants' motion and dismisses these claims.

### c.   ADA claims

Plaintiff alleges that he was "discharged without just cause and without pay . . . for Attendance and Appearance . . . in violation of Title VII of the ADA." (SAC 3.) He argues that UPS terminated his employment instead of affording him reasonable accommodations. (Pl. Suppl. Opp'n 23.)

Local 804 argues that Plaintiff did not file an EEOC complaint against Local 804 and that, in any event, Plaintiff does not provide any factual allegations that Local 804 discriminated

against him based on a disability.[11]  (Local 804 Mem. 23–25.)

UPS argues that Plaintiff's reasonable accommodation claim under the ADA must fail because "UPS approved such an accommodation shortly after Plaintiff requested one pursuant to UPS policy,"[12] and because "failure to accommodate is an essential element of a discriminatory discharge claim under the ADA, UPS's reasonable accommodation is fatal to Plaintiff's [discharge] claim."  (UPS Reply Mem. 7–11.)  UPS also argues that Plaintiff's "opposition fails to establish that his alleged termination for 'appearance' was related, in whole or in part, to a failure to appear clean-shaven."  (*Id*. at 8–9.)

ADA employment discrimination claims are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019); *Burke v. N.Y.C. Transit Auth.*, 758 F. App'x 192, 194 (2d Cir. 2019) (applying the burden-shifting framework to analyze the plaintiff's ADA employment discrimination claim); *Littlejohn v. City of New York*, 795 F.3d 297, 307–09 (2d Cir. 2015) (discussing burden-shifting) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)); *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235

---

[11]  While Plaintiff alleges that he filed an EEOC complaint against UPS and Local 804 for discrimination, (SAC 5), the right to sue letter attached to the SAC names only UPS as a respondent, (Dismissal and Notice of Rights, annexed to SAC, Docket Entry No. 1).  However, the Court need not decide whether Plaintiff exhausted his administrative remedies with regard to his ADA claim against Local 804 because Plaintiff does not allege any facts to support an inference that Local 804 refused to grieve or failed to properly grieve his claims because of his disability.  *See Robinson v. Macy's*, No. 14-CV-4937, 2014 WL 6997598, at *10 (S.D.N.Y. Dec. 5, 2014) (dismissing the plaintiff's Title VII discrimination claim against her union because the plaintiff failed to "allege facts tending to show that the [u]nion's refusal to grieve her claims with the employer was motivated by anything having to do with her race").

[12]  Because UPS' reply memorandum argues only that it accommodated Plaintiff's alleged disability but does not contest whether Plaintiff's skin conditions constitutes a disability under the ADA, the Court will assume, without deciding, that Plaintiff's skin condition is a disability under the ADA.

(2d Cir. 2015) (applying *McDonnell Douglas* framework to ADA discrimination claim).  Under the framework, a plaintiff must first establish a *prima facie* case of discrimination by showing that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis*, 804 F.3d at 235; *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015).  If the plaintiff meets this "minimal" burden, *Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008), a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307).  If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff to show that the defendant-employer's reason was pretext for the discrimination.  *Id*. at 83.

At the pleading stage, "the plaintiff does not need substantial evidence of discriminatory intent," and need only "sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311 (emphasis in original); s*ee also Burke*, 758 F. App'x at 194 (finding that to state an ADA employment discrimination claim, "a plaintiff must allege an adverse employment action that occurred under circumstances giving rise to an inference of discrimination"); *Vega*, 801 F.3d at 87 ("[A] plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.").  "[A] plaintiff need only give plausible

20

support to a minimal inference of discriminatory motivation." *Id*. at 84 (internal quotation marks and citation omitted).

However, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal alterations, citations, and quotation marks omitted); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she 'suffered [an] adverse employment action because of [her] disability.'") (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) (alterations in original)).  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Major life activities include, *inter alia*, standing, lifting, bending, speaking, and working.  42 U.S.C. § 12102(2)(A); *see also Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014).

### i.    Reasonable accommodation claim

Discrimination in violation of the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).  A plaintiff states a *prima facie* failure to accommodate claim by alleging that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods.*

*Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d

181, 184 (2d Cir. 2006)); *see also Vitti v. Macy's Inc.*, 758 F. App'x 153, 157 (2d Cir. 2018)

(same).

The parties agree that UPS instructed Plaintiff to file for an "appearance variance with

central HR." (Pl. Suppl. Opp'n 5.) Plaintiff subsequently filed for the variance which UPS

approved by email on June 28, 2017, days *after* UPS issued Plaintiff a Notice of Discharge.

(Email dated June 28, 2017, annexed to Pl. Suppl. Opp'n as Ex. 2, Docket Entry No. 43.) As

part of Plaintiff's approved variance, UPS permitted him "to have a neatly trimmed beard, no

longer than one-quarter inch in length or less." (*Id*.) UPS approved the variance "for as long as

[Plaintiff's] condition persists," and reserved the right to require "recertification." (*Id*.)

Although UPS accommodated Plaintiff's disability, UPS appears to have approved the

accommodation after Plaintiff's termination on June 22, 2017. (Email dated June 28, 2017.)

Because UPS does not dispute that Plaintiff's "appearance," which the Court understands to at

least include Plaintiff's skin condition, was a factor in Plaintiff's termination, Plaintiff's

allegations are sufficient to state a reasonable accommodation claim under the ADA.[13]

In addition, construing Plaintiff's allegations liberally and interpreting them to raise the

strongest arguments they suggest, Plaintiff appears to argue that the proposed accommodation,

which was granted after his termination, was not reasonable because UPS should have allowed

him to "not shave pursuant to a medical diagnosis." (Pl. Suppl. Opp'n 22.)

Because the accommodation was approved after Plaintiff's discharge and "[t]he

reasonableness of an employee's accommodation is a 'fact-specific' question that often must be

---

[13] Plaintiff's Notice of Discharge included "appearance" as a reason for Plaintiff's
termination. (Reimo Letter.)

resolved by a factfinder," *Noll v. Intern'l Bus. Machines Corp.*, 787 F.3d 89, 95 (2d Cir. 2015), the Court finds that Plaintiff has sufficiently pled an ADA failure to accommodate claim based on his allegations that UPS denied his request for a reasonable accommodation, *see Price v. City of New York*, 797 F. Supp. 2d 219, 233 (E.D.N.Y. 2011) ("Although [d]efendants' proposed accommodation — a parking pass for a lot with bus access to [the p]laintiff's post — may well be a reasonable one, this issue is a question of fact that the court declines to resolve on a motion to dismiss."); *see also Noll*, 787 F.3d at 95 (finding that in some cases where "the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable'" (quoting *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996))).

Accordingly, the Court denies UPS' motion to dismiss Plaintiff's ADA reasonable accommodation claim.

### ii.  Discriminatory discharge claim

Plaintiff alleges that his disability "affected his attendance and appearance" and that UPS "used [P]laintiff's [disability] to terminate him, as stated in the letter of discharge."  (Pl. Suppl. Opp'n 21.)

As stated in the Reimo Letter, during a hearing on June 30, 2017, Plaintiff, UPS employees, and Plaintiff's union representatives discussed Plaintiff's "Notice of Discharge issued on June 22, 2017 for violation of the final warning that he received from the UPS/Local 804 Grievance Panel inclusive of but not limited to failure to follow instructions with methods and procedures, attendance, and appearance."  (Reimo Letter.)  Drawing all inferences in Plaintiff's favor, Plaintiff's allegations suggest that his appearance was due to his failure to shave which resulted from his skin condition.  While Defendants argue that "Plaintiff's discharge for

23

'attendance and appearance' could have been due to a violation of any number of UPS's Standards of Appearance regulations," (UPS Reply Mem. 9), Defendants' arguments casting doubt on Plaintiff's allegations as to what appearance regulation Plaintiff violated raises a factual dispute inappropriate for resolution on a Rule 12(b)(6) motion.[14]  *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (holding that courts must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff").

    Because Plaintiff's allegations plausibly suggest that his appearance, which was impacted by his skin condition, was a motivating factor in UPS' decision to terminate his employment, the Court denies UPS' motion as to Plaintiff's ADA claim.

    **d.    Plaintiff's Title VII claim**

    Defendants argue that the SAC contains no factual allegations to support a claim of discrimination under Title VII.  (Local 804 Mem. 24; UPS Mem. 12.)  The Court agrees.

    Title VII discrimination claims are analyzed under the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas*.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016); *see also Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 739 F. App'x 23, 25 (2d Cir. 2018); *Littlejohn*, 795 F.3d at 307–08.  Under the framework "a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the

---

[14]  UPS argues that its reasonable accommodation is fatal to Plaintiff's discharge claim. (UPS Reply Mem. 8.)  However, because, at this time, the Court declines to decide as a matter of law that UPS' accommodation was reasonable and, in any event, based upon Plaintiff's allegations it appears that the accommodation was approved after Plaintiff's termination, the Court finds UPS' argument unpersuasive.

circumstances give rise to an inference of discrimination.'" *Vega*, 801 F.3d at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).  If the plaintiff meets this "minimal" burden, *Holcomb*, 521 F.3d at 139, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct, *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 311).  If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff to show that the defendant-employer's reason was pretext for the discrimination.  *Id.* at 83.

At the pleading stage, however, a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas prima facie* case.  *Littlejohn*, 795 F.3d at 311; *see Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (discussing *McDonnell Douglas* burden at the pleading stage in the context of Title VII cases); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))).  Instead, a plaintiff need only plead facts sufficient to give "plausible support" to the plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims.  *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312); *see also Javed v. Medgar Evers Coll. of City Univ. of N.Y.*, 724 F. App'x 73, 74 (2d Cir. 2018) (citation omitted).  The allegations must "put forward 'at least minimal support for the proposition'" that the adverse employment action was "motivated by [the employer's] discriminatory intent."  *Javed*, 724 F. App'x at 74 (quoting *Vega*, 801 F.3d at 85); *see also Vega*, 801 F.3d at 87 ("[A] plaintiff must plausibly allege that (1) the employer took adverse action

against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Plaintiff does not plead that he falls within a protected class under Title VII.[15]  In addition, the SAC does not contain any factual allegations that would give rise to an inference of discrimination on the part of UPS or Local 804.  Accordingly, the Court dismisses Plaintiff's Title VII claims.  *See Shaw v. McDonald*, 715 F. App'x 60, 61 (2d Cir. 2018) (affirming the dismissal of plaintiff's Title VII claims when plaintiff failed to plausibly allege that his religion was a motivating factor in his termination).

  e.  **Plaintiff's criminal law claim**

Plaintiff alleges that Defendants "defraud[ed] its members of salary as defined in 18 U.S.C. §1001(a)(1)."  (SAC 4.)

Defendants argue that Plaintiff, as a private citizen, cannot enforce criminal laws.  (Local 804 Mem. 16–17; UPS Mem. 13.)

Section 1001(a)(1) provides that:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly or willfully — (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any

---

[15]  To the extent Plaintiff's relies on his disability to assert a Title VII claim, the claim fails because Title VII, by its plain language, does not protect against discrimination based on disability.  *See* 42 U.S.C. § 2000e-2(a) (stating that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."); *see also Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 148 (2d Cir. 2018) (stating that Title VII "did not protect those discriminated against . . . on the basis of age or disability; that required later legislation"); *Schwartz v. NYS Ins. Fund*, No. 17-CV-8973, 2018 WL 3442962, at *4 (S.D.N.Y. July 17, 2018) ("Title VII does not protect against discrimination based on disability.").

materially false, fictitious or fraudulent statement or entry; shall be fined under this title, [or imprisoned].

18 U.S.C. § 1001(a).  "Section 1001 criminalizes false statements and similar misconduct occurring 'in any matter within the jurisdiction of any department or agency of the United States.'"  *Hubbard v. United States*, 514 U.S. 695, 699 (1995).  The statute is a criminal statute with no "explicit evidence of Congressional intent" to create a private cause of action.  *See Cenzon-DeCarlo v. Mount Sinai Hosp.*, 626 F.3d 695, 697 (2d Cir. 2010) ("Federal courts have inferred private rights of action, but only when there is explicit evidence of Congressional intent."); *see also Zito v. NYC Office of Payroll Admin*, No. 11-CV-2779, 2011 WL 5420054, at *3 (S.D.N.Y. Nov. 9, 2011) ("A private right of action will not be implied without 'explicit evidence of Congressional intent.'" (quoting *Cenzon-DeCarlo*, 626 F.3d at 697)).  Where "there is no explicit evidence of Congressional intent" to create a private cause of action, a private citizen cannot enforce this federal criminal law.  *See Momot v. Dziarcak*, 208 F. Supp. 3d 450, 460 (N.D.N.Y. 2016) ("Courts examining [section 1001(a)] have concluded that [section 1001(a)] contains no implied right of a civil action."); *see also Fed Sav. & Loan Ins. Co. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987) (finding no private cause of action in section 1001 because "there is no affirmative indication that Congress intended to furnish civil remedies"); *Johl v. Johl*, 556 F. Supp. 5, 7 (D. Conn. 1981) ("It is clear that [section 1001] cannot serve to provide the plaintiff, a private citizen, with a cause of action in this civil case.").  As a private citizen, Plaintiff cannot enforce this law.  The Court therefore dismisses Plaintiff's section 1001 claim.

### f.  Plaintiff's state law fraud claim

Plaintiff alleges that Local 804 and UPS are "routinely conspiring" to "discharge employees' right to remain on the job with pay in violation" of the NMA and Supplemental

Agreement "even though the employee did not commit a cardinal violation as defined in Article 12, Sections 1 & 2 of the CBA." (SAC 4.) Plaintiff also alleges that Local 804 is "routinely and with malice failing to properly invoke Article 7 of the CBA thus defrauding its members of salary." (*Id.*)

Local 804 argues that Plaintiff fails to plead any fraud claim with particularity and fails to plead that Local 804 made a fraudulent statement, or a misrepresentation or omission of material fact. (Local 804 Mem. 18–19.)

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015); *see Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (stating the elements of fraud under New York law). Pleadings for common law claims premised on fraud are "subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Putnam Advisory Co.*, 783 F.3d at 402–03 (internal quotation marks omitted) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). "Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25–26 (2d Cir. 2016) (quoting Fed. R. Civ. P. 9(b)).

Plaintiff fails to plead that Local 804 made a fraudulent statement, much less when the statement was made, where the statement was made, or under what circumstances the statement was made. Accordingly, the Court dismisses Plaintiff's fraud claim.

### g.    Proposed third amended complaint

Plaintiff seeks leave to file a proposed third amended complaint, arguing that he "added additional violations, rectified a few errors, and added some additional information" to the proposed third amended complaint ("Proposed TAC"). (Pl. Mot.) In the Proposed TAC, Plaintiff alleges additional violations of the NMA and Supplemental Agreement. (Proposed TAC 3.) Plaintiff also alleges violations of the NYSHRL and NYCHRL for his alleged unlawful termination for "attendance and appearance." (*Id.*)

Local 804 argues that allowing Plaintiff to file the Proposed TAC would be futile because his duty of fair representation claim is time-barred. (Local 804 Reply Mem. 25.)

Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

### i.   Amendment to breach of duty of fair representation and hybrid claim

The Proposed TAC adds no new allegations that would establish a plausible claim against Local 804 for breach of the duty of fair representation.  (*See generally* Proposed TAC.)  In addition, as discussed above, Plaintiff's claim as to Local 804's breach of the duty of fair representation is untimely, and, because Plaintiff cannot assert a hybrid section 301 claim against UPS without establishing Local 804's breach of the duty of fair representation, allowing Plaintiff to file the Proposed TAC would be futile.  *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."); *Allen v. United Parcel Service, Inc.*, 988 F. Supp. 2d 293, 301 (E.D.N.Y. 2013) (finding that the plaintiff's NLRA claim was untimely and therefore granting leave to amend would be futile).  Moreover, although Plaintiff again alleges that Local 804 and UPS are routinely conspiring to discharge employees' right to remain on the job with pay, (Proposed TAC 4), Plaintiff fails to provide any factual allegations in support of a conspiracy and fails to allege any fraudulent statements made by Local 804 or UPS.

### ii.   Amendment to Title VII claim

In addition, the Proposed TAC makes reference to Title VII but does not add any new allegations that would support a claim of discrimination under Title VII.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted.").

The Court therefore denies Plaintiff's motion for leave to file the Proposed TAC.[16]

### iii.   Leave to file a corrected, proposed third amended complaint

The Court grants Plaintiff leave to file a corrected, proposed third amended complaint as to the Title VII and fraud claims.  Plaintiff must specify his protected status and include factual allegations to support his belief that Defendants discriminated against him on the basis of his protected status.  In addition, the corrected, proposed third amended complaint should provide specific allegations as to the conduct Plaintiff believes constitutes fraud.  Moreover, the corrected, proposed third amended complaint must be captioned "Corrected Third Amended Complaint" and bear the same docket number as this Memorandum and Order.  Plaintiff must also reallege his ADA claims, which claims the Court allows to proceed.  Plaintiff may also reallege his NYSHRL and NYCHRL claims as they relate to his disability and protected status.

---

[16]  Plaintiff again brings a criminal claim under section 1001 of Title 18 of the United States Code, but as set forth above, Plaintiff cannot pursue this claim as there is no private cause of action under this statute.

### III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss for failure to state a claim. The Court grants Defendants' motion and dismisses Plaintiff's duty of fair representation and hybrid section 301/fair representation, Title VII, criminal law, and state law fraud claims and declines to allow Plaintiff to file the proposed third amended complaint. The Court denies Defendant UPS' motion to dismiss Plaintiff's ADA claims and allows those claims to proceed. The Court grants Plaintiff leave to file a corrected, proposed third amended complaint consistent with this Memorandum and Order within thirty (30) days of the date of this Memorandum and Order.

Dated: August 20, 2019
      Brooklyn, New York

SO ORDERED:

      s/ MKB
MARGO K. BRODIE
United States District Judge